McGREGOR W. SCOTT
United States Attorney
GRANT B. RABENN
JEFFREY A. SPIVAK
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | 1:19-MJ-00106-EPG |
|---|---|
| Plaintiff, | GOVERNMENT'S MOTION REQUEST FOR SUSPENSION OF LIMITATIONS TO PERMIT GOVERNMENT TO OBTAIN FOREIGN EVIDENCE |
| v. | |
| ARA GARABED DOLARIAN, | |
| Defendant. | |

The United States hereby moves the Court for an order for the suspension of statute of limitations to permit the United States to obtain foreign evidence. On March 15, 2019, the government obtained a complaint charging defendant DOLARIAN with Illegal Arms Brokering, Conspiracy, and Money Laundering. The conduct defendant DOLARIAN is alleged to have committed involved him brokering an arms contract with the Government of Nigeria, and receiving funds in excess of $8 million for his involvement in this proposed arms deal—all without the approval of the U.S. Department of State. Agents arrested defendant DOLARIAN on May 15, 2019 in Fresno, California when he had briefly returned to the United States from Bulgaria, where he was residing at the time. Defendant DOLARIAN made his initial appearance on May 16, 2019, and he was ordered detained as a flight risk by Magistrate Judge Oberto on May 20, 2019. Further, on May 28, 2019, pursuant to a stipulation by the parties, the Court ordered an extension of time for the preliminary hearing to June 27, 2019.

As part of its ongoing investigation into the illegal arms trafficking and money laundering

activity of defendant DOLARIAN, the United States obtained and issued a Mutual Legal Assistant Treaty (MLAT) request to the Government of Nigeria. The MLAT request was delivered to the Nigerian authorities on November 25, 2016. The MLAT requests asks for, *inter alia*, Nigerian law enforcement reports and other materials related to defendant DOLARIAN and his co-conspirators; for Nigerian official records related to defendant DOLARIAN and his co-conspirators; and interviews of individuals in Nigeria involved in the arms deal that defendant DOLARIAN brokered in 2014. As of the date of this motion, the prosecution team has not received a response from Nigeria.

Title 18, U.S.C., Section 3292(a)(1) provides that:

> *Upon application of the United States, filed before return of an indictment, indicating that evidence of an offense is in a foreign country, the district court before which a grand jury is impaneled to investigate the offense shall suspend the running of the statute of limitations for the offense if the court finds by a preponderance of the evidence that an official request has been made for such evidence and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country.*

Further, subsection (b) provides that a period of suspension of the statute of limitations "shall begin on the date on which the official request is made and end on the date on which the foreign court or authority takes final action on the request."

The crimes alleged in the pending complaint all have a statute of limitations of five years pursuant to Title 18, U.S.C., Section 3282.

In light of the foregoing, the United States moves the Court to suspend the statute of limitations pursuant to Section 3292 because of the government's pending MLAT request to Nigeria for foreign evidence.

Dated: June 5, 2019

McGREGOR W. SCOTT
United States Attorney

By: /s/ GRANT B. RABENN
GRANT B. RABENN
Assistant United States Attorney

GOVERNMENT'S REQUEST FOR SUSPENSION OF
LIMITATIONS

# DECLARATION

I, GRANT B. RABENN, declare as follows:

1. I am an Assistant United States Attorney for the Eastern District of California and I am familiar with the facts described below.

2. The prosecution team obtained approval from the Department of Justice for an MLAT request to Nigeria on October 28, 2016. I was informed by the Department of Justice on March 1, 2017 that the MLAT request was delivered to the Nigerian authorities on November 25, 2016. The prosecution team has not received a response from the Nigerian authorities as of the date of this motion.

3. The evidence requested by the prosecution team in the MLAT request to Nigeria is likely located in Nigeria, including official Nigerian records and individuals located in Nigeria.

4. For the reasons stated above, the government asks the Court for a suspension of the statute of limitations until the prosecution team receives a response from the Government of Nigeria, not to exceed three years, as set forth in Title 18, U.S.C., Section 3292(c)(1).

5. I hereby attached a copy of the MLAT as Exhibit 1.

6. I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 5th day of June 2019.

/s/ GRANT B. RABENN
GRANT B. RABENN
Assistant United States Attorney

# Exhibit 1



**U.S. Department of Justice**

Criminal Division

VAA:RT:JMO:MS
DOJ No.: 182-49538

*Office of International Affairs*                              *Washington, D.C. 20530*

TO:        The Central Authority of the Federal Republic of Nigeria

SUBJECT:   Request for Assistance in the Criminal Investigation of Ara G. Dolarian et al.

FILE NO:   182-49538

DATE:      October 28, 2016

## INTRODUCTION

The Central Authority of the United States of America requests the assistance of the Central Authority of the Federal Republic of Nigeria pursuant to the Treaty between the Government of the United States of America and the Government of the Federal Republic of Nigeria on Mutual Legal Assistance in Criminal Matters (the Treaty).

The United States Attorney's Office for the Eastern District of California (prosecutor) and the U.S. Department of Homeland Security, Homeland Security Investigations (HSI) (collectively, the U.S. authorities) are investigating whether Ara G. Dolarian (Dolarian), Dolarian Capital Inc. (DCI), Myron F. Smith (Smith), and Marion George Ford III (Ford) (collectively, the Subjects), violated U.S. criminal laws by conspiring to broker or attempting to cause the export of weapons and ammunition to Nigeria without the necessary approvals of the United States government.

The U.S. Central Authority seeks Nigerian Government documents and records relating to any applications made on behalf of the Subjects for permission or authority to conduct arms and munitions sales to Nigeria, including copies of any investigative reports prepared by Nigerian law enforcement agents. The prosecutor needs these records to prove that the Subjects violated U.S. law and for use in a future prosecution.

## CONFIDENTIALITY

Because of the sensitivity of the investigation, the prosecutor asks that this request be kept confidential. Therefore, in accordance with Article VI of the Treaty, please treat this document, its contents, the fact that this request has been made and the results of its execution as confidential and do not disclose it publicly or share it with the subjects of the investigation. Also, please instruct all those who must be made aware of this request for purposes of its execution that the request, its contents and subject matter are to be kept confidential and should not be shared with the subjects of the investigation nor disclosed publicly. Should it become impossible to execute any portion of this request without breaching such confidentiality, please contact the U.S. Central Authority prior to doing so, in order to discuss how to proceed.

## TIME CONSTRAINTS

The prosecutor anticipates bringing charges against certain Subjects as early as November 2016. Therefore, please provide the evidence requested as soon as possible.

## THE FACTS

The investigation conducted by U.S. authorities has revealed that in early June 2014, Dolarian, through his company, DCI, an arms brokerage company located in Fresno, California, entered into agreements with Nigerian government entities for the sale of weapons. Specifically, on or about June 4, 2014, Dolarian executed a sales agreement (the Nigerian Contract) with an individual named Hima Aboubakar (Aboubakar), owner of Société d'Equipements Internationaux (S.E.I.), an intermediary for the Nigerian Ministry of Defense. Aboubakar and S.E.I. are arms brokers with offices in Niger and Nigeria. S.E.I. was tasked with procuring arms and ammunition on behalf of the Nigerian Ministry of Defense. Under the Nigerian Contract,

2

Dolarian/DCI agreed to sell rocket launchers, high caliber guns, general purpose bombs, and various ammunition to the Nigerian Ministry of Defense.[1] It was agreed that the sale would be facilitated by Aboubakar. The value of the Nigerian Contract was approximately USD $8,616,000. A copy of one version of the Nigerian Contract is attached as Exhibit A.

In May and June 2014, shortly before the execution of the Nigerian Contract, a total of USD $10 million was wired from a Nigerian-controlled account in the name of "National Security Adviser Office" to an account in the name of SK-Sawki Limited (Sawki) (account number 640116927838) at HSBC-Hong Kong (the Sawki Hong Kong Bank Account). The investigation carried out by U.S. authorities has revealed that Sawki is a company owned by citizens of Niger who are closely associated with Aboubakar. In the course of their investigation, U.S. authorities have also learned that, in 2014, the Nigerian Government allocated approximately USD $1 billion to the Nigerian National Security Adviser Office for the purpose of procuring military equipment.

On June 17, 2014, Sawki made a wire transfer in the amount of USD $5 million from its Hong Kong Bank Account to Dolarian through Smith, Dolarian's business partner and DCI's purported in-house lawyer. The USD $5 million payment related to the Nigerian Contract. Over the next weeks and months, Dolarian and Smith transferred USD $712,000 to Marion Ford III, Dolarian's agent in the Czech Republic, and funneled the remainder of USD $5 million sum into different bank accounts they (Dolarian and Smith) controlled. Over the next four months, the

---

[1] U.S. Authorities have seen more than one version of the Nigerian Contract. Signed versions of the Nigerian Contract involved the following weapons: DEFA Type 553 gun, arming wire for 125 kg bomb ARM MLE FZA, arming wire for 250 kg bomb SECU MLE FZA, arming wire for 250 kg bomb SAMP MLE FZA, MARTA 155 Type Launch Pad, 100kg bomb HE, 250kg bomb, DEFA Ammunition, Pylon, F71A, and a 68 mm SNEB Rocket.

money moved from Smith's bank account to DCI's business bank account and then back to Smith's bank account, before being funneled into the bank accounts of two Dolarian-controlled shell companies, "Martel 3D" and "Arthur Ave Consulting" in September and October 2014. Martel 3D is a real estate holding company established in Dolarian's wife's name and Arthur Ave Consulting was newly incorporated by Smith with bank accounts held by Dolarian. Neither Martel 3D or Arthur Ave Consulting had any established connection to Dolarian's arms business. U.S. authorities believe that Dolarian and Smith used this method of transferring the money in order to conceal the source of the funds and to make it more difficult for law enforcement authorities to track.

On approximately June 19, 2014, DCI requested permission from the U.S. State Department's Directorate of Defense Trade Controls (DDTC) to perform on the abovementioned Nigerian Contract. Under U.S. law, before an American citizen may lawfully sell military weapons abroad, he or she must first obtain a license from the DDTC. DCI has not received U.S. government approval to sell weapons abroad since 2013. Additionally, since 2013, the DDTC has repeatedly informed DCI of the U.S. government's decision to "presumptively deny" any weapons applications submitted by DCI. DDTC took this action after conducting an administrative review of DCI's past brokering activity and finding derogatory information during the course of that review. On August 8, 2014, the DDTC denied DCI's brokering application dated June 19, 2014, effectively barring DCI's ability to perform on the Nigerian Contract. The DDTC reminded DCI once again that it was under a status of presumptive denial and that pending satisfaction of the review by the DDTC, the authorization request made by DCI was rejected.

4

Starting on July 13, 2014, Dolarian and General Mamu directly communicated with each other via email regarding the Nigerian Contract. In corresponding with Dolarian, General Mamu utilized email account Captmamu@yahoo.com. Additional information indicates that the two men met in person in Prague, Czech Republic. Note the below email sent from Dolarian to Mamu on August 16, 2014:

> From: Ara Dolarian
> Subject: Alpha Jet
> To Akili Mamu, captmamu@yahoo.com; Marion Ford, mgfiii@gmail.com
> Cc: sci_sarl@yahoo.fr
> Dear General Mamu:
>
> When we meet in Prague on the subject of Alpha Jet. The agreement was that I would send to Nigeria, two (2) men from my office in Fresno and one (1) inspector from the air bomb factory to inspect the Alpha Jets. I hope to send you the passports of all three (3) men this week, so that their Visa's can be arranged.
> Ara

In addition to communicating with Dolarian, General Mamu regularly exchanged information with Aboubakar regarding the Alpha Jet project. Information collected from multiple sources indicates that General Mamu was the Nigerian Air Force official in charge of the Alpha Jet Project.

In August 2014, Dolarian engaged a consultant, Bertwin Lord (Lord), to contact suppliers in South Africa in an attempt to find another supplier to fulfill the Nigerian Contract. Lord enlisted the assistance of Louis du Plessis (du Plessis) and Charles Wright (Wright), both residents of South Africa. Between August and December 2014, after DDTC denied Dolarian's application to conduct the Nigerian transaction, Dolarian and Lord continued to exchange emails regarding the availability and prices of weapons relating to the Nigerian transaction. The emails

5

also discussed the need for background checks and inspections in South Africa. Dolarian requested that Lord inform du Plessis that Dolarian was interested in acquiring the weapons.

On September 11, 2014, Dolarian and DCI received USD $3,620,000 from S.E.I. (which funds represented the difference between the USD $8.6 million Contract and the USD $5 million wire transfer received on June 17, 2014). Dolarian transferred an additional USD $515,000 of that money to Ford III, Dolarian's agent in the Czech Republic. Other portions of the funds were deposited into the Martel 3D and Arthur Ave Consulting bank accounts controlled by Dolarian. Attached as Exhibit B is a flow chart showing the movement of funds received by Dolarian as part of the Nigerian Contract.

Between September 23 and September 25, 2014, there were several email exchanges between Dolarian, Lord, du Plessis and M.L. Slabber (Slabber). At the time, Slabber was a sales manager for ARMSCOR, which is an arms manufacturer located in South Africa. After receiving price quotes for certain weapons and ammunition from Slabber, and discussing weapons inspections and government paperwork that would be required to complete the transaction, Dolarian attempted to fulfill the Nigerian Contract with weapons procured from ARMSCOR.

Dolarian and others began working to obtain the necessary South African government paperwork required to export the weapons to Nigeria. On October 8, 2014, Dolarian's agents circulated an end-user certificate for the weapons that they were attempting to broker from ARMSCOR to fulfill the Nigerian Contract. An end-user certificate is a document which certifies that the buyer is the final recipient of the materials, and in which the buyer also attests that he or she does not plan to transfer the materials to another party. The end-user certificate is

required for most international weapons transfers. The end-user certificate that was circulated on October 8, 2014, had been signed by the Nigerian Foreign Ministry and was addressed to the South African Non-Proliferation Council (NPC) and the National Conventional Arms Control Committee (NCACC) of South Africa. The end-user certificate stated in relevant part:

> It is hereby certified that the item(s) listed on the attached ANNEX will be delivered to: NIGERIAN AIR FORCE - MINISTRY OF DEFENSE, ABUJA, NIGERIA.

On or about October 27, 2014, Dolarian and Lord sought to formalize an agreement with Charles Wright of Charles Peter Wright Investments, who was brokering the sale with ARMSCOR relating to the acquisition of these weapons. As a result, a Non-Disclosure and Confidentiality Agreement was prepared. The agreement stated:

> The Parties intend to discuss certain matters regarding potential business opportunities concerning items sale [SIC] with ARMSCOR starting with a project for 20,000 DEFA 68mm Rockets and 50,000 DEFA 30mm projectiles and the further sale of ARMSCOR items around the world ("Opportunity" or "Opportunities").

On October 29, 2014, Wright sent an email to Lord in which he stated that he (Wright) had begun coordinating with ARMSCOR in order to obtain the necessary approval from the South African government. According to information obtained by U.S. Authorities, Dolarian and Lord terminated their business relationship shortly following the October 29, 2014 email, after which time Lord stopped communicating with du Plessis and Wright concerning the ARMSCOR transaction. Email communications in November 2014 between Dolarian and Aboubakar indicated that Dolarian and DCI were still seeking to obtain weapons from South African weapons suppliers to satisfy the Nigerian Contract.

7

In November 2014, Marion Ford who was Dolarian's agent located in the Czech Republic started communicating with Saleh Usman (also known [aka] Usman Dantala), the Nigerian Defense Attaché stationed at the Nigerian Embassy located in Pretoria, South Africa. The purpose of the communications was to facilitate the export of Alpha Jet munitions from South Africa to Nigeria. On December 24, 2014, Ford and Usman exchanged the following email chain:

> From: Marion Ford
> Subject: Export License
> To: Saleh Usman
>
> Thank you Sir for your timely response. This is promising news. Hoping you have pleasant free days and a happy new year.
> M
>
> On Dec 24, 2014 2:17 PM, "Saleh Usman" <dansala_lara64@yahoo.ie> wrote:
>
> It's possible because we have engagement on arms purchase is directly discussed between the 2 governments. We already had a fruitful meeting and will continue after the festivities of XMAS and the new year. Will keep you posted as it progresses. Thanks and wish you and family the very best of XMAS and new year.
>
> SMD
>
> On Dec 24, 2014, at 2:33 PM, Marion Ford <mgfiii@gmail.com> wrote:
>
> Sir,
> I have heard a rumor that euc we submitted and was accepted has been granted an export license. Do you know anything about that???
> I look forward to your response.
> Best,
> Marion

On or about February 1, 2015, U.S. Authorities seized roughly USD $6,000,000 from Dolarian's bank accounts that were traced to the wire transfers made by the Nigerian Government through Sawki.

8

On or about February 17, 2015 General Mamu sent Saleh Usman (aka Usman Dantala) an email titled, "MFA AUTHENTICATED NAS EUCs AND NAF NON TRANSFER DOCUMENTS." In the February 17, 2015 email, Mamu forwarded an email he received from Bassey Sunday Cletus, a warrant officer for the Nigerian Air Force Holding Company (NAFHC). In that original email, Bassey Sunday Cletus sent General Mamu two executed EUCs referencing Dolarian's Nigerian Contract number "14_090v4." The two EUCs were both signed by Air Vice Marshal for Chief of the Air Staff RA Ojuawo. General Mamu then forwarded the EUCs to Saleh Usman (aka Usman Dantala) and said "Corrected authenticated EUC. It will be legalized tomorrow. The DA was not in today. Thanks." Attached as Exhibit C is a copy of the email exchange with the attached EUCs obtained by law enforcement.

In September 2015, HSI agents interviewed Aboubakar. Aboubakar confirmed he acted as an intermediary between the Nigerian Air Force and potential Alpha Jet suppliers, such as Dolarian. Aboubakar stated that Dolarian said that he had authorization for the U.S. Department of State and that the license was ready to provide the Alpha Jet weapons to Nigeria. Aboubakar stated that Dolarian demanded 100% payment up front and that the Nigerians agreed to make that payment. Aboubakar stated that General Mamu travelled to Europe for a weapons inspection, but Dolarian did not make the weapons available for inspection. Aboubakar believes that the Nigerian government ultimately obtained the weapons directly from South Africa's arms supplier Armscor.

Based on documents discovered in the course of the investigation and the statements from Aboubakar, US authorities believe that the Nigerian Government, the South African

9

Government, and Armscor may have completed the Alpha Jet project concluding with the export of Alpha Jet munitions from South Africa to Nigeria sometime after February 17, 2015.

## THE OFFENSES

**Title 18, United States Code, Section 371.   Conspiracy**

If two or more persons conspire to either commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be . . . imprisoned not more than five years [...].

**Title 22, United States Code, Section 2778.   Arms Export Control Act**

(a) Presidential Control of Exports and Imports of Defense Articles and Services, Guidance of Policy, Etc,
  (1) In furtherance of world peace and the security and foreign policy of the United States, the President is authorized to control the import and the export of defense articles and defense services and to provide foreign policy guidance to persons of the United States involved in the export and import of such articles and services. The President is authorized to designate those items which shall be considered as defense articles and defense services for the purposes of this section and to promulgate regulations for the import and export of such articles and services. The items so designated shall constitute the United States Munitions List [...]

(b) Registration and Licensing Requirements for Manufacturers, Exporters, or Importers of Designated Defense Articles and Defense Services

(1)

(A)

(i)   As prescribed in regulations issued under this section, every person (other than an officer or employee of the United States Government acting in an official capacity) who engages in the business of manufacturing, exporting, or importing any defense articles or defense services designated by the President under subsection (a)(1) shall register with the United States Government agency charged with the administration of this section, and shall pay a registration fee which shall be prescribed by such regulations. Such regulations shall prohibit the return to the United States for sale in the United States (other than for the Armed Forces of the United States and its allies or for any State or local law enforcement agency) of any military firearms or ammunition of United States manufacture furnished to

10

foreign governments by the United States under this chapter or any other foreign assistance or sales program of the United States, whether or not enhanced in value or improved in condition in a foreign country. This prohibition shall not extend to similar firearms that have been so substantially transformed as to become, in effect, articles of foreign manufacture.

(ii)
- (I) As prescribed in regulations issued under this section, every person (other than an officer or employee of the United States Government acting in official capacity) who engages in the business of brokering activities with respect to the manufacture, export, import, or transfer of any defense article or defense service designated by the President under subsection (a)(1), or in the business of brokering activities with respect to the manufacture, export, import, or transfer of any foreign defense article or defense service (as defined in subclause (IV)), shall register with the United States Government agency charged with the administration of this section, and shall pay a registration fee which shall be prescribed by such regulations.
- (II) Such brokering activities shall include the financing, transportation, freight forwarding, or taking of any other action that facilitates the manufacture, export, or import of a defense article or defense service.
- (III) No person may engage in the business of brokering activities described in subclause (I) without a license, issued in accordance with this chapter, except that no license shall be required for such activities undertaken by or for an agency of the United States Government [...].

(c) Any person who willfully violates any provision of this section...or who willfully, in a registration or license application or required report, makes any untrue statement of a material fact or omits to state a material fact required to be stated therein or necessary to make the statements therein not misleading, shall upon conviction be fined for each violation not more than $1,000,000 or imprisoned not more than 20 years, or both.

**Title 18, United States Code, Section 1956.   Laundering of Monetary Instruments**

(a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity–

(A)(i) with the intent to promote the carrying on of specified unlawful activity; or

(B) knowing that the transaction is designed in whole or in part—

(i) to conceal or disguise the nature, location, the source, the ownership, or the control of the proceeds of specified unlawful activity...

...and shall be imprisoned for not more than 20 years.

## SUBJECTS AND ENTITIES INVOLVED

| | |
|---|---|
| Name: | ARA DOLARIAN |
| Citizenship: | United States of America |
| Date of Birth: | ▮ |
| Height: | 5 feet 10 inches (177.80 cm) |
| Weight: | 250 pounds (113 kg) |
| Hair: | Brown |
| Race: | White |
| Sex: | Male |
| Passport number: | ▮ |
| Place Issued: | United States of America |
| Address: | ▮ |

| | |
|---|---|
| Name: | MARION GEORGE FORD III |
| Citizenship: | United States of America |
| Date of Birth: | ▮ |
| Hair: | Bald |
| Eyes: | Unknown |
| Race: | Black |
| Sex: | Male |
| Passport number: | ▮ |
| Place Issued: | United States of America |
| Address: | Prague, Czech Republic |

| | |
|---|---|
| Name: | MYRON FRANCIS SMITH |
| Citizenship: | United States of America |
| Date of Birth: | ▮ |
| Hair: | Gray |

| | |
|---|---|
| Eyes: | Unknown |
| Race: | White |
| Sex: | Male |
| Passport number: | ███████ |
| Place Issued: | United States of America |
| Address: | Fresno, California |

| | |
|---|---|
| Name: | DOLARIAN CAPITAL, INC. |
| Entity: | California Corporation |
| Entity Number: | ███████ |
| Filed: | July 2, 2004 |
| Address: | ████████████████████████ |
| Owner: | Ara G. Dolarian |

## ASSISTANCE REQUESTED

**Police and Investigative Reports**

Please provide copies of Nigerian law enforcement reports, videos, and documents associated with the Nigerian Contract in 2014 and 2015, involving:

a. Ara G. Dolarian,
b. Dolarian Capital Inc.,
c. Myron S. Smith,
d. Marion George Ford III,
e. Hima Aboubakar,
f. Société d'Equipements Internationaux,
g. General Akili Mamu (Nigerian Air Force),
h. Saleh Usman (aka Usman Dantala),
i. RA Ojuawo, and
j. SK-Sawki Limited.

**Official Records**

Please provide certified copies of official records relating to:

a. Ara G. Dolarian,
b. Dolarian Capital Inc.,
c. Myron S. Smith,
d. Marion George Ford III,
e. Hima Aboubakar,
f. Société d'Equipements Internationaux,
g. General Akili Mamu,

    h.  Saleh Usman (aka Usman Dantala),
    i.  RA Ojuawo, and
    j.  SK-Sawki Limited.

The United States seeks all documents relating to the abovementioned individuals concerning the brokering, sale, or purchase of weapons and ammunition involving Nigeria in 2014 and 2015. Such documents should include, without limitation:

(a) Records of financial transactions involving these individuals in Nigeria relating to weapons transactions;

(b) Requests to the government of Nigeria for permission to purchase, sell and/or ship weapons and ammunition to Nigeria;

(c) Submissions by the above individuals concerning weapons transactions in Nigeria;

(d) End-user certificates approved by the government of Nigeria; and

(e) Emails and communications with government officials concerning weapons transactions.

**Witnesses**

Please locate and make available for interviews any individual, including those mentioned below, who had direct involvement with the Dolarian Capital – SEI contract identified as DCI 14_090 or otherwise known as the Alpha Jet Project. Nigerian Air Force officials may know this project by reference numbers NAF/515/CAcE or NAF/515/CTOP. The known individuals are:

    a)  General Alkali Mamu
        Nigerian Air Force
        Date of Birth: Oct 01, 1960
        Nigerian Passport number: F00022552

    b)  Saleh Usman (aka Usman Dantala)
        Defense Attaché, Nigerian Embassy, Pretoria, South Africa, (2014)
        Phone number: 27718364766

    c)  RA Ojuawo
        Air Vice Marshal for Chief of the Air Staff

    d)  Bassey Sunday Cletus
        Warrant Officer, Nigerian Air Force Holding Company (NAFHC)
        22 Niami Street

WUSE Zone 2
Abuja

## PROCEDURES TO BE FOLLOWED

### Official Records

To ensure that the official records will be admissible at trial in the United States, please cause the custodian of the records, or such other duly authorized representatives who have knowledge concerning such records, to duly authenticate the copies of the records. Specifically, please ask the executing authority to do the following:

1. Cause the custodians of the records to produce true and correct copies of the official records;

2. Have the official providing the documents complete and attach an Attestation of Authenticity of Official Records (Form B-1 appended to the Treaty, attached to this request);

3. Attach the completed Form B-1 to the records provided and transmit those records, through the Nigerian Central Authority, to the Office of International Affairs, U.S. Department of Justice, 1301 New York Ave., N.W., Washington, D.C. 20530; and

4. Invite the person(s) producing the records to appear to testify, if it should become necessary, in the U.S. District Court for the Eastern District of California, at a date and time to be determined and at the expense of the United States government.

### Witnesses

1. Please authorize the prosecutor and HSI agents to be present during the interviews and to participate in the questioning to the greatest extent possible, including by posing questions directly to the witnesses. If this is not possible, please permit the prosecutors and the investigators to pose follow-up questions after the Nigerian authorities pose the initial questions. The topics of questions to be asked are summarized in **Attachment A**. These witnesses are not targets or subjects of the U.S. criminal prosecution.

2. Please invite the persons interviewed to appear to testify at trial, if it should become necessary, at the United States District Court for the Eastern District of California, at a date and time to be determined and at the expense of the U.S. government. Should the invited individual decline to travel to the United States, please permit the deposition of this person at a time and place to be determined in accordance with procedures mutually agreed to by the United States and Nigerian authorities.

For further information, please contact Michael Surgalla, Office of International Affairs, Criminal Division, United States Department of Justice, at 202-616-9840 or by email at michael.surgalla@usdoj.gov.

## CONCLUSION

The United States Central Authority thanks the Central Authority of Nigeria in advance for its attention to this particular request, relating to Ara Dolarian, Dolarian Capital, Inc., and others, and for any assistance Nigerian authorities are able to render in this matter.

28 OCTOBER 2016
Date

Jeffrey M. Olson
Acting Deputy Director